```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
 JEREMY CHERNOFSKY, individually and on          :
 behalf of all others similarly situated,        :
                                                 :
                          Plaintiff,             :
                                                 :   MEMORANDUM DECISION
              - against -                        :   AND ORDER
                                                 :
                                                 :   20-cv-5529 (BMC)
 GC SERVICES LIMITED PARTNERSHIP and             :
 John Does 1-25,                                 :
                                                 :
                          Defendants.            :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Jeremy Chernofsky brings this action individually and on behalf of a putative class against defendant GC Services Limited Partnership for violating the Fair Debt Collection Practices Act ("FDCPA") by including deceptive claims in a debt collection letter. See 15 U.S.C. § 1692. Defendant moves for summary judgment contending that its collection letter was unambiguous, factually accurate, and not misleading. The Court agrees with defendant and therefore grants the motion.

## BACKGROUND

Defendant entered into an agreement to collect debt that plaintiff owed to American Express. This case concerns two communications that defendant directed toward plaintiff while collecting that debt. The first was a phone call in which defendant enrolled plaintiff in a payment plan. The second was a collection letter, which included plaintiff's monthly payment, total balance, and a warning that the amount owed could be increased by interest or other fees. Plaintiff argues that the warning contradicted the notion of a "fixed" payment plan, which deceived and misled plaintiff in violation of Section 1692e. Also relevant to this case are communications from American Express to plaintiff, including plaintiff's cardmember

agreement, a confirmation letter memorializing the terms of the payment plan, and plaintiff's monthly billing statements.

The record before the Court on this motion for summary judgment reflects that plaintiff entered into an agreement by which he would render an upfront payment, followed by 11 monthly payments of $222, to fully repay his obligation to American Express. On the initial phone call, defendant explained to plaintiff that he could secure a 5.99% annual percentage rate (APR) on his outstanding debt by entering the payment plan, but warned that missing a payment could result in removal from the plan:

> During your participation in the program, no late payment fees will be assessed on your account for 12 months. Your variable annual percentage rate will not exceed 5.99 percent for 12 months. Any balance will [sic] a lower APR during the program period will remain at the lower rate unless the rate expires. There is no guarantee the offer terms will not change in the future. Enrolling now will help you lock in a low interest rate, while ensuring you are not charged late payment fees for the duration of the program . . . .
>
> [I]f you miss a payment, make a late payment or a payment is returned, American Express reserves the right to remove your account from this payment program plan. The original terms and conditions detailed in your card member agreement may then replace the plan terms.

Shortly after the phone call, American Express sent plaintiff a confirmation letter, which conveyed essentially identical information about the payment plan. American Express also sent plaintiff billing statements, including one statement reflecting that $11.14 had accrued in interest during his first month in the payment plan. At around the same time as that statement, defendant sent plaintiff a collection letter reflecting the monthly payment and total balance due. The collection letter also included a warning that interest or other charges could result in an increase to plaintiff's total balance:

> As of the date of this letter, you owe $2,249.14. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment

may be necessary after we receive your payment. For further information, write the undersigned or call [phone number].

## DISCUSSION

Summary judgment is available if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

The FDCPA regulates how a debt collector may collect consumer debt, with the aim of "eliminat[ing] abusive debt collection practices." 15 U.S.C. § 1692e. Section 1692e bars a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute provides a non-exhaustive list of violations, including a catch-all provision for any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

To determine whether a debt collector has run afoul of Section 1692e, the Second Circuit uses an objective standard based on the "least sophisticated consumer." See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). This hypothetical consumer "does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer." Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010). However, the consumer "is neither irrational nor a dolt," and a court must be "careful not to conflate lack of

3

sophistication with unreasonableness." Id. "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Clomon, 988 F.2d at 1319. "[I]n crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." Id. The issue of whether a collection letter is deceptive to the least sophisticated consumer is a question of law. Berger v. Suburban Credit Corp., No. 04-cv-4006, 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006).

The Second Circuit has adopted safe harbor language that debt collectors can use to convey that the amount of debt owed may vary due to interest or other charges, consistent with the collectors' duty under Section 1692g to accurately convey the amount of debt owed. See Avila v. Riexinger & Assocs., LLC, 817 F.3d 72, 76 (2d Cir. 2016) (adopting the Seventh Circuit's approach in Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872 (7th Cir. 2000)). But the inclusion of Avila language does not necessarily immunize a debt collector from all FDCPA liability. For example, a debt collector is not protected by the safe harbor if it obscures Avila language by "adding confusing or other information (or misinformation)." Avila, 817 F.3d at 77 (quoting Miller, 214 F.3d at 876). Additionally, a debt collector may not include Avila language to "imply or suggest that there may be additional charges when in fact there will not be additional charges." Leitner v. Client Servs., Inc., No. 20-cv-700, 2020 WL 3489482, at *3 (E.D.N.Y. June 26, 2020).

This is not a case where a debt collector sent a debtor Avila language about variable fees when the debt was not variable. Our plaintiff accepts that interest was accruing during the payment plan, as defendant warned through its Avila language. Plaintiff's claim is that the language in the phone call and collection letter regarding his $222 monthly payment implied that

4

his debt would be completely satisfied with a series of fixed payments that were not subject to change, and that the reference to interest or other charges, as reflected in the Avila language, was deceptive and contradictory in violation of Section 1692e.[1]

Defendant explained the payment plan's terms to plaintiff during their phone call, including the precise APR that would apply to plaintiff's outstanding debt.  In fact, defendant's very first statement about the payment plan was that "American Express has put an incredible opportunity in place for you that will *reduce the interest rate* and stop late fees."  It is hard to fathom, and plaintiff makes little effort to explain, how the least sophisticated consumer could think that the payment plan would be free of interest when the first thing he heard about the plan is that it would "*reduce* the interest rate," not remove interest altogether.  Certainly, after hearing about the payment plan's APR on the phone call and seeing the APR and amount of accrued interest in American Express's communications, the least sophisticated consumer would understand that interest was accruing during the payment plan at a 5.99% APR, and therefore would not be deceived by Avila language accurately stating that the total balance might change. See Campagna v. Client Servs., Inc., No. 18-cv-3039, 2019 WL 6498171, at *9 (E.D.N.Y. Dec. 3, 2019) ("To read the subject Letter, a settlement offer letter, in isolation and ignoring the full extent of Plaintiff's financial history regarding her [] credit card account . . . would be to eliminate the reasonableness component of the least sophisticated consumer standard, which the Court declines to do.").  The only reasonable interpretation the least sophisticated consumer could make is that the payment plan included interest.

---

[1] Although it is not entirely clear from the pleadings, plaintiff's briefing suggests he believes that defendant violated Section 1692e(10), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

This Court has previously dismissed an FDCPA action against the same defendant using similar Avila language in the context of a debt settlement. See Golubeva v. GC Servs. Ltd. P'ship, 767 F. Supp. 2d 369 (E.D.N.Y. 2010).[2] There, defendant offered to settle plaintiff's account for a lump-sum payment, which represented 70% of the total debt owed. Defendant also included safe harbor language stating that the amount owed could vary from the fixed settlement sum due to interest or other charges. This Court found that the debt settlement offer and Avila language were not deceptive, even though the communication included both a fixed settlement amount and a warning about potential variation in the amount owed. So too here. "[T]he mere fact that defendant has included both the disclaimer and the settlement offer in the same communication, does not automatically render the letter misleading." Id. at 371. Just as the lump-sum settlement in Golubeva was compatible with Avila language, so is the payment-plan settlement at issue here.

The cases that plaintiff cites do not support his argument that defendant violated Section 1692e. In those cases, the relevant communications included false information, such as warnings about interest where no interest could apply or misstatements of the amounts owed, or failed to state whether interest would accrue. See, e.g., Madorskaya v. Frontline Asset Strategies, LLC, No. 19-cv-895, 2020 WL 423408 (E.D.N.Y. Jan. 27, 2020); Polak v. Kirschenbaum & Phillips, P.C., No. 17-cv-1795, 2018 WL 1189337 (E.D.N.Y. Feb. 16, 2018), report and recommendation adopted, 2018 WL 1187400 (E.D.N.Y. March 6, 2018). Defendant's conduct here is free of such defects. Defendant accurately and unambiguously conveyed the agreed-upon monthly payment, total balance, and APR. It also accurately conveyed that the total balance might change. That was true because interest was accruing, which was made clear by repeated reference to the

---

[2] Golubeva, which predates Avila, noted that the disclaimer "mirror[ed]" Miller "safe harbor" language.

6

5.99% APR in the phone call and the American Express communications, one of which showed that $11.14 in interest had accrued while plaintiff was participating in the payment plan. And, because plaintiff could be removed from the payment plan for failing to adhere to its terms (as was communicated during the phone call), defendant's statement that plaintiff may be subject to late charges or other charges was also accurate, as such charges were proper under plaintiff's cardmember agreement, which would have governed plaintiff's debt if he were removed from the payment plan for nonpayment.[3]

In effect, plaintiff argues that any debt settlement plan that includes interest, Avila language, or a condition that removes debtors from the plan for nonpayment is self-contradictory and violates the FDCPA. But that is not the law. There is nothing inherently contradictory about debt settlement plans that include interest, and the FDCPA does not and should not bar such arrangements. These settlements help people escape debt by offering terms that ease the burden of their existing debt, as the payment plan did here by sharply reducing plaintiff's APR and removing late fees.[4] Finding liability in cases like this would disincentivize debt collectors from offering debt settlement plans and could "end up hurting the least sophisticated consumer by making her pay higher interest rates, collection costs, or depriving her of access to credit at all, rather than helping her." Ocampo v. Client Services, Inc., No. 18-cv-4326, 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019).

---

[3] It is only necessary for one of the three components of fees (interest, late charges, or other charges) to be variable to render Avila language accurate. See Avila v. Reliant Cap. Sols., LLC, No. 18-cv-2718, 2018 WL 5982488, at *4 (E.D.N.Y. Nov. 14, 2018), aff'd, 771 F. App'x 46 (2d Cir. 2019). Thus, to the extent that plaintiff continues to assert that defendant had a policy against collecting interest – an allegation a) made in opposing the motion for judgment on the pleadings but not in plaintiff's opposition to the converted motion for summary judgment; b) not included in his complaint; and c) not supported by any evidence in the record – that argument does not disturb the Avila language's accuracy as to the interest or charges he might have incurred if removed from the payment plan.

[4] If not for the payment plan, American Express would have continued to apply an APR of 19.74%, or even a penalty APR of approximately 30%.

## CONCLUSION

Defendant's [24] motion for summary judgment is granted.[5]

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       November 28, 2023

---

[5] The remaining defendants are 25 John Does, who plaintiff has not identified in the three years since filing his complaint. The Court therefore dismisses plaintiff's claims against the 25 unidentified John Does *sua sponte*. See Williams v. Johnson, No. 17-cv-2351, 2019 WL 1437820, at *8 (S.D.N.Y. March 31, 2019).